Good morning, Your Honors. Merrick Eskijian for the Plaintiff and Appellant Stephen Berns. I'd like to reserve five minutes for rebuttal, please. This is our second go-around here with the Ninth Circuit in this case. We already established that the insurer's decision to deny the defense was incorrect, and the Ninth Circuit analyzed the policy, analyzed the exclusion that the denial was based on, and decided that the insurer's decision to deny was based on an untenable position, which is clear when you look at, I mean, it's the law of the case now that denial was based on an untenable position. And reviewing the terms of the policy and understanding California law with regard to interpreting insurance policies, it's obvious why the court reached that conclusion. Let me back up a second. All we're talking about now is bad faith, right? Right. And coverage. Yes. And no longer duty to defend, just bad faith and delaying acknowledging a duty to defend. Those things, yes, Your Honor. Because I gather Sentry's already reimbursed your client, what, around $362,000 for the cost of defense? They finally did, Your Honor, after I don't know how many years. Yes, they did. And your client has settled with his sister for, what, about $1.1 million? My client had to pay the cross-complainant in the underlying action. As a result of having to defend himself and paying hundreds of thousands of dollars in attorney's fees he couldn't afford, he had to pay, yes, he was forced to settle. Oh, that's behind us. That's behind us. And as Judge Leitfeld says, we're down now just to was Sentry in bad faith in denying. Yes. The reason I, at first, right away have brought up the history and the decision by the Ninth Circuit is that it's the law of the case in this case, based on the prior decision by the Ninth Circuit, that the denial was based on a position that was untenable. Well, sure, but that's not the test for bad faith. The test for bad faith is whether the insurance company unreasonably took the position that it had no duty to defend, not whether the position was incorrect. We are here based on the trial court's granting of a motion for summary judgment based on the genuine dispute doctrine. The Supreme Court in Wilson has stated very clearly what the law is with regard to what the insurance company has to prove in order to establish a genuine dispute defense. The reason I answer your question that way is that at trial, the issue would be establishing that the insurance company acted unreasonably. At the summary judgment stage, it's different. The burden is on the insurance company to prove two things, prove that the undisputed facts do not leave any triable issue with regard to whether the denial was based on a position that was unreasonable or that was in good faith. It had to be a reasonable position objectively, and it had to be done on grounds that were in good faith. And that has to be – there can be no triable issue with regard to that. So that's the focus when we're talking about the genuine dispute doctrine. And in our case, the law that was – the facts that were presented by the insurer here on their motion – You don't have much dispute about the facts here, do we? No, and that's why I want to point out that their denial – The dispute is about what interpretation would be reasonable and whether it was genuinely held. But I don't think we have a dispute about genuineness either. I don't think you produced any evidence that the insurance company was saying, yeah, we're going to lose on this. We're obviously wrong, but let's make them work for it. You see that in some cases, but I don't see it in the record in this one. It looks like it's purely whether the position that they took was reasonable, which would shield them from punitives, or whether it just plain wasn't. They were out in left field, in which case they could be exposed to punitives. What am I missing there? Yes, part of it is was their decision based on a reasonable interpretation, but there's also the factor of whether they were acting in good faith. Sure, but I didn't see any evidence here. Sometimes you do see a position that's deliberately held in bad faith by the insurance company. They say the insurance didn't cover the period at issue, and their internal documents acknowledge, and all the documents acknowledge that it was within the policy term, but you don't see that here. Two things that are interesting in this case, going to your point. First of all, the insurance company, when they filed their motion for summary judgment in the trial court, the initial, back when we were trying to do the discovery, to get the information with regard to whether their conduct was reasonable and whether they believed in their position, they took the attorney-client privilege and refused to produce their coverage opinion that the coverage counsel provided to the insurer. I didn't see what was the matter with that. Well, I mean, those of us who've done insurance defense work, we write letters to the companies where we don't just say, this is what you have to do. We write letters saying there are authorities going this way and that way, and I think the chances that you'll win or the chances that the other side will win or maybe this percentage. The facts here make your case an unattractive one to take up, or they make it a good one to take up if the superior court gets it wrong. I mean, there's all kinds of traditionally confidential stuff there. Sure. They have the absolute right to take the attorney-client privilege, but when they do that, they are withholding the key critical evidence that goes to whether or not they were acting in good faith. In what case do you cite this as that you can breach the attorney-client privilege here? No, we can't breach the attorney-client privilege. They have every right to assert the attorney-client privilege, but the jury has the right to determine whether they're withholding the most critical evidence. Well, not from the attorney, though. I mean, the cases you cite, they all go to things like the crime fraud exception or the defense of acting on counsel's advice. There are circumstances where it can be pierced, and I think those are the ones in the cases you cited. No, the cases I've cited, you don't pierce the attorney-client privilege. Of course, there's a crime fraud exception, but that's not what we're doing and that's not what we're arguing for. Also pierce it if it's a defense of counsel defense or advice of counsel defense. Now, I've researched all the state courts, the federal courts in the United States. I've never found one case where an insurance company was allowed to raise a defense of reasonable conduct while asserting the attorney-client privilege and withholding the very evidence that would establish whether their conduct was actually in good faith. I myself have done lots of work for insurance companies in the past. I have written more than 100 coverage opinions for insurance companies, and I'm well aware of the procedure. You write a coverage opinion to the carrier and you say, these are the pros and the cons of whatever we're doing here. And then if the carrier decides to deny the claim based on the advice that I've given them, then there is a denial letter written to the insured. Well, in our case, all we have is the denial letter. We don't have the real evidence, which is the real evidence. Let me ask you about an 11th Circuit. In Sentry's denial letter to your client, they cite an 11th Circuit case of universal underwriters versus Stokes Chevrolet, where it was almost identical language about the meaning of the word intentional. And it says, quote, the policy exclusion unambiguously excludes from coverage all intentional acts giving rise to liability, regardless of whether the insured subjectively intended the resulting damages or injuries. And that's partly what Sentry relied on. And they told you that. What's unreasonable about relying on the 11th Circuit's interpretation of almost the identical language? It would have justified them denying coverage. Well, because, first of all, the policy in that case was distinguishable. But, secondly, the law that was relied on in that case was Alabama law. But California had an opined on it, so why wouldn't they have in good faith say, well, but probably the 9th Circuit would do the same as the 11th with nearly identical exclusion language? The case that you're talking about doesn't even help. Even if it was applicable, it doesn't help Sentry, because in that case it was an accident policy. Not like in our case. Ours is a specific act, specified acts policy, where the insurance company. Wasn't that case also about the interpretation of the term intentional? Yes. And so citing to that case, their position is, look, here's how we interpret it. Here's a case that supports that, albeit it's under Alabama law. There's no reason to think that the same thing wouldn't apply in California. We can't find a case that says the contrary in California. So, you know, getting back to Judge Gilman's question, what's unreasonable about taking that position and relying on that universal underwriter's case to interpret the term intentional? Because that case was an accident policy, there would be no reasonable expectation of the insured. The seminal case in California for determining whether there's a duty to defend based on the language of a policy is Gray v. Zurich. And in that case, the court explained that in California we look first at the coverage language. The coverage language first, and then we look at the exclusion. We broadly construe the coverage language. And in a specified acts policy, such as we have in this case, there's an expectation based on the language of the policy. The insurance company in this case promised to cover intentional acts, defined as wrongful termination and harassment, promised to do it. And so then when you, and you have to broadly construe that, because that was the promise of coverage. Then when you look at the exclusion, you have to narrowly, you are required to narrowly construe the exclusion. So the word intentional cannot be taken in a vacuum. You have to look at the overall language of the policy. And in the accident policy in the Alabama case, all they said was that they were going to cover an accident. An accident is far different than an intentional act, which was promised to be covered in our case. And in fact, Century even didn't, wasn't quite honest about what was available, even under the Alabama case. Under that case, they didn't say that they would never cover any volitional conduct. In that case, they said that they wouldn't cover intentional conduct. Well, there's a big difference between intentional, which is here, and volitional, which is here. It leaves room for coverage for negligent and reckless. And in our case, as the court of appeal, as the Ninth Circuit already discussed in the prior decision in this case, what the insured did, the underlying conduct, there's plenty of evidence that it was not intentional wrongful conduct. But he had every reason, he was justified in terminating this client. But he didn't like the fact that his sister had sued him for a million dollars, right? Well, who would? Maybe he owed her the money, that's what she claimed. Maybe, but that's the beautiful thing about the duty to defend. In the duty to defend, it is an immediate duty that arises upon the time that you are sued. The insurance company has an immediate duty. If there's any potential for coverage, the insurance company is required to immediately agree. And if the policy has an exclusion that is capable of more than one reasonable interpretation, under the duty to defend, the insurance company has a duty to immediately agree to defend, even if there's a, even if there were five reasonable interpretations of that exclusion that would allow the insurance company to deny the duty to defend, if there's just one that's a reasonable interpretation that would allow for the defense, the insurance company has to, as a matter of law, defend, regardless of whether there are other reasonable interpretations. And so that's why the case law, the appellate court decisions in California that have come down in the last few years, last number of years, say they don't believe that the genuine dispute doctrine even applies to the duty to defend, because it's contradictory. On the one hand, under California law, you have to defend whenever there's any potential, and that includes if you have a situation where you've got... an issue or a legal issue, and that seems to make sense to me. There are cases that say that, but when you go to the purpose and the language with regard to what the duty to defend is in California, when you have to defend, regardless of whether there's an objective expectation, a reasonable expectation by the insurance company, that they have an interpretation that would allow them to deny, but then you have another interpretation that's reasonable that wouldn't allow them to deny, they have to defend. So it doesn't make a difference whether there's some cases that draw a distinction between factual and legal. In any situation where there is a legal interpretation that requires... Well, remember that under Wilson, which is the only California Supreme Court case that talks about what the law is with regard to the genuine dispute doctrine, the insurance company has the burden on the summary judgment motion of establishing an absence of tribal issues with regard to objectivity, which is the reasonable part, and also good faith. If you can wrap it up, counsel, you're over time. I'm sorry. In summary, on this part of it, because the duty to defend, the law in California requires the insurance company to immediately defend whenever there is at least one interpretation that is reasonable, that would require them to defend, they must immediately defend. Good morning, Your Honors. Eldon Edson for Appellee, Century Select Insurance Company. May it please the Court. Your Honor, it is Century's position that the district court in this case, the determination of the district court on Century's motion for partial summary judgment was correct and should be affirmed on appeal, and of course, based on the briefs, you know it's based on the application of the genuine issue doctrine. In this case, Your Honor, Century's coverage position was based on a straightforward application of the policy language. It was based on undisputed facts, as Your Honor noted. It was based on supporting legal authority. There was, in fact, one case, the Chandler case, which we cited, which was in the position letter, which is on all fours, looked at the exact same language. Also, Your Honor, although it's not dispositive, the district court's granting of summary judgment with respect to the coverage issue, the initial granting of summary judgment, also supports Century's position that its position in denying the defense was reasonable. Additionally, Your Honor, we would note that the prior appeal that was before this court also lends support for the position that Century's declination was reasonable and that the court recognized that there was authority supporting Century's position. What word are you relying on for that? Your Honor, in the initial opinion of this court with respect to the duty to defend issue, the court recognized that there were interpretations, there was case law supporting Century's interpretation regarding the meaning of the word intentional, which goes toward the issue of Century's reasonableness. So we have all the things I just mentioned. We have a district court judge agreeing with our position, and we have the Ninth Circuit acknowledging that there are authorities in support of Century's position. Your Honor, with respect to counsel's argument regarding the genuine dispute doctrine, appellate is essentially asking this court to restrict or eliminate the genuine dispute doctrine in the third-party insurance context and to change California law. To date, there is not a single California appellate court decision which has held the doctrine inapplicable in a third-party context. I recognize there have been some decisions where the court in dicta questioned the applicability of the doctrine, but in all those cases, the court then went on to apply it. The court might have found a genuine issue, a material fact, barring application in a summary judgment context, but no court has held that it doesn't apply. Has any court held that it does apply in the third-party context? This court in Lunsford has stated that it does apply in the third-party context, and in fact, we feel the Lunsford decision... Well, it was an issue in Lunsford. Well, I thought the insured in that case really didn't contest the question, and so it wasn't really squarely confronted. Well, Your Honor, I think the mere fact that the court on its own, sua sponte, looked at that issue and made a ruling based on the application of the doctrine tells us that it is something that the court considered, and in fact, numerous courts have cited Lunsford since then, district courts, and I believe also the Ninth Circuit as well, and have applied the genuine issue doctrine in the third-party context. Really, Your Honor, it's at the heart of the doctrine, and the appellants keep trying to conflate the issue with the duty to defend, with the reasonableness standard, which is at the heart of the genuine dispute doctrine, but this reasonableness standard, Your Honor, is the same whether it's applied by a judge on summary judgment or whether it's applied by a jury. There's a jury instruction which looks at this, and the jury instruction talks about reasonability. Was the insurance carrier unreasonable? So the doctrine does apply in the third-party context in California. Also, where there is no factual dispute, and it's purely a question of law before the court, a carrier can reasonably rely on case law and a reasonable interpretation of the policy that supports a coverage position and not be in bad faith. There are situations, many situations, where the carrier just gets it wrong. They, you know, they had a reasonable position, they relied on the policy language and the case law, and a judge disagrees with them. Under the appellant's analysis, the carrier is always going to be in bad faith if that happens. But that's just not the law. It's not the case. So on the one hand, there's this duty to defend standard, and if a court finds that the carrier was incorrect with respect to its coverage position, then we get to the second tier of analysis. Was the carrier's decision reasonable? And the decision on the second issue does not eliminate plaintiff's damage claim. It just means that plaintiff's damages are limited to their contract-based damages. So in this case, the bench noted that we paid the defense fees, $362,000 or something, including about $119,000 in interest. In contract cases, the measure of damages are contract damages. In the insurance context, it's the only context I'm aware of where there is a potential for elevated tort remedies when they're in the contract context. So the genuine dispute issue, it doesn't, a finding that there's a genuine dispute, that the carrier's position was reasonable, does not eliminate the contract-based damages. It just, it says that the carrier's reasonable, it got it wrong, but the court makes a decision that the enhanced remedies, the tort-based remedies, are not going to be available based on the fact that the carrier's position was not unreasonable. Counsel, a typical way that excess liability comes about and that punitive damages come about are when there are documents between adjusters and claim superintendents, that sort of thing, where they say, yeah, we probably owe the money, yeah, the claim for policy limits is pretty strong, but let's make them work for it, or maybe we'll get lucky, or something along those lines, and those pretty typically turn into bad faith claims. In this case, was there any documentation that turned up during the discovery that could give rise to an interpretation along those lines? In short, Your Honor, no. As Your Honor noted earlier, the facts in this case were very straightforward and not in dispute. In terms of the facts that were material... On the documents. Yeah. Oh, the documents in our case... What I'm interested in is the full record, because I didn't read everything that the district court did. There's no obligation for the insurance carrier to waive attorney-client privilege. My next question, what that looked to me like is, well, I haven't seen anything yet, but if there is something, it's in the attorney communications, where the attorney might say, there's a smoking gun there in that memo of September 18th, and we're dead in the water if they get a copy of that memo. In that sort of situation, where that's all you've got, can the plaintiff or can the plaintiff not break through the attorney-client privilege? Your Honor, the insured is not going to be able to break through the attorney-client privilege unless the carrier puts it in issue. The carrier could put it in issue by availing itself to the advice of counsel defense, which is a defense to bad faith, and it can be one factor in a bad faith defense. But we made a point of not asserting the advice of counsel defense. And in the briefs, the appellant complains that we'd asserted the privilege and that they claim we hadn't produced our coverage opinion. We said, well, a carrier, like any party, has a right to defend itself, has a right to avail itself to the attorney-client privilege, and we objected to their discovery request, and they never compelled it. And now they're complaining that they didn't get... I don't think it should. Let me raise another thing they raised. They say that your agent, Dane Taylor, promised Burns that the policy would provide coverage any time he was sued by an employee. And he's saying it's bad faith because, in fact, now the company changes its position. What do you say about that? Your Honor, thank you for raising that. This is, you know, in plaintiff's brief, they make a point of this sort of parade of horribles, and this is sort of a parade of horribles issue for the insurance industry, and it's a direct attack on the sort of sanctity of contract. If in every situation where an insurer didn't like the result of a coverage determination, they just, you know, came out after the fact, in this case long after the fact, and said, oh, yeah, your agent told me this was covered, insurers would have to leave the state of California if that were the law. The broker's alleged misinterpretation does not impact the plain meaning of the policy, and where coverage turns on policy language alone, there's no need to further investigate, and it doesn't matter if the broker misinterpreted the policy, as opinion evidence is not relevant to interpret the policy. And that's from the Brinderson Newberg versus Pack Erector's case. It's a 1992 Ninth Circuit decision, 971 Fed Sec, I'm sorry, 272283. It's also a decision that Judge Fisher in the district court relied on in support of her position. So it's the language of the policy that controls, Your Honor, and there's no reason to go beyond the language of the policy in this case, particularly when the facts are clear and not in dispute. All right, thank you, counsel. Your Honor, do you want me to address anything else? I know there were a lot of things brought up. I'm happy to address anything. I don't have any additional questions, Judge Kleinfeld. Great, thank you, Your Honor. Both sides. Thank you for your arguments. The matter is submitted. Your Honor, I have reserved five minutes. Actually, you ran out of time. We've got the argument. It's well briefed. We've got it. Thank you. Thank you, Your Honor.
judges: Gilman, Kleinfeld, Nguyen